IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **CHERILYN PATRICIA PARSONS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00103-P-BP |
| | § | |
| **ANDREW M. SAUL,**[1] | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Cherilyn Patricia Parsons ("Parsons") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") payments under Title XVI. ECF Nos. 1 and 19. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **REVERSE** the Commissioner's decision and **REMAND** this case for further administrative proceedings.

**I.      STATEMENT OF THE CASE**

On January 6, 2016, Parsons filed applications for a period of disability and DIB. *See* SSA Admin. R. (hereinafter, "Tr.") 10, ECF No. 17-1. She also filed an application for SSI on January

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

11, 2016. *Id.* In all applications, Parsons alleged that her disability began on May 2, 2015. *Id.* The Commissioner initially denied her claim on May 20, 2016 and denied it again on reconsideration on August 29, 2016. *Id.* Parsons requested a hearing, which was held before Administrative Law Judge ("ALJ") Kevin Batik on July 27, 2017 in Fort Worth, Texas, with Parsons, her attorney, and a vocational expert ("VE") present. *Id.* The ALJ issued his decision on January 18, 2018, finding that Parsons was not disabled. Tr. 19.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Parsons had not engaged in substantial gainful activity since May 2, 2015, the alleged onset date. Tr. 13. At step two, he determined that Parsons had severe impairments of degenerative disc disease and depression. *Id.* In contrast, he found that her asthma was well-controlled and thereby non-severe. *Id.* At step three, the ALJ found that Parsons's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). *Id.* At step four, the ALJ ruled that Parsons had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. Tr. 14. The ALJ also found that Parsons cannot climb ladders, ropes, or scaffolds, nor can she work at unprotected heights or drive as part of her job. *Id.* Additionally, he determined that she can understand, remember, and carry out simple tasks and instructions, and that she cannot interact with the public, but is able to occasionally interact with supervisors and coworkers. *Id.* Further, the ALJ held that Parsons is unable to perform any past relevant work. Tr. 17. At step five, he found that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she could perform. Tr. 18.

The Appeals Council denied review on December 7, 2018. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.  FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and the administrative record, Parsons was born on November 10, 1972 and has at least a high school education. Tr. 18. Her employment history includes work as a cashier, store laborer, medical record clerk, checker, and hospital admitting clerk. Tr. 17-18. She asserts that a combination of impairments renders her disabled under the SSA. ECF No. 1 at 2.

## III.  STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Id.* § 404.1527; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments

that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999). "The claimant bears the burden of showing that [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitation." 20 C.F.R. § 416.945(a)(1); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is

present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.  ANALYSIS

Parsons raises two issues on appeal. She claims that (1) the listing and RFC analyses are not supported by substantial evidence because the ALJ improperly weighed the opinion evidence of a consultative examiner and (2) the case was adjudicated by an improper and unconstitutionally appointed ALJ and should be remanded for a new hearing with a different and constitutionally appointed ALJ. ECF No. 19 at 17.

### A.  The ALJ Improperly Weighed the Opinion Evidence of the Consultative Examiner.

Parsons argues that the ALJ erred by failing to properly weigh the opinion evidence of Beatrix Wagner, Psy.D., a consultative examiner. ECF No. 19 at 11. Specifically, she maintains that the ALJ failed to evaluate the consultative examiner's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6), the same factors used to analyze the opinion of a treating physician. *Id.* at 12. She also contends that the ALJ "attempted to utilize irrelevant portions of the record while ignoring pertinent evidence in order to justify granting only partial weight to her opinion." *Id.* at 11. The Commissioner responds that the ALJ properly weighed the opinion evidence because the ALJ stated that he considered the entire record, and the Fifth Circuit in *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) "has ruled that such express statements are statements that the Court should consider as true statements of the ALJ's actions." ECF No. 20 at 9. The Commissioner also asserts that the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) are not applicable in this instance because Dr. Wagner is not a treating physician. *Id.*

5

at 10. Further, the Commissioner maintains that the ALJ thoroughly analyzed Dr. Wagner's consultative opinion and provided a detailed explanation for giving it partial weight. *Id.*

As an initial matter, the undersigned notes that contrary evidence may provide a legitimate basis to dispute the ALJ's express statement that he considered all the evidence and the entire record. *See Brunson*, 387 F. App'x. at 461. Because the record may "belie[] the generic statements that appear to be asserted within every ALJ decision," an ALJ's statement that "he considered the entire record is not a satisfactory replacement for specific discussion and consideration of evidence that an ALJ must consider and state reasons for discounting." *Allison v. Berryhill*, No. 1:16-CV-0170-BL, 2018 WL 1274853, at *8 (N.D. Tex. Feb. 16, 2018), report and recommendation adopted, No. 1:16-CV-170-C, 2018 WL 1276820 (N.D. Tex. Mar. 9, 2018). Therefore, given that contrary evidence and reasons detailed below provide a legitimate basis to dispute the ALJ's general statement, the Commissioner's argument that the ALJ properly weighed the opinion evidence simply because the ALJ stated that he considered the entire record is without merit.

To the extent that Parsons argues the ALJ erred by failing to evaluate Dr. Wagner's opinion using the relevant factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the undersigned notes that Dr. Wagner examined Parsons on only one occasion and, therefore, does not qualify as a treating physician for purposes of social security regulations. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008). Findings of fact made by consultative examiners regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from nonexamining sources at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not limited by the consultative

examiner's opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

Although an ALJ is required to consider all medical opinions in determining the disability status of a claimant, *see* 20 C.F.R. § 404.1527(b), the ALJ is not required to give controlling weight to medical opinions of nontreating sources. *See Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013) (stating that an ALJ is not required to give the opinion of, *inter alia*, a consultative examiner controlling weight). Moreover, the ALJ is not required to apply the six-factor analysis in 20 C.F.R. § 404.1527 to nontreating physicians. *See Newton*, 209 F.3d at 455-56. Therefore, the ALJ need only consider Dr. Wagner's opinions as evidence to be weighed. *See Andrews*, 917 F. Supp. 2d at 637. As Dr. Wagner was only a consultative examiner, the ALJ was not obligated to provide the detailed analysis required by *Newton*. Accordingly, her medical opinions do not have controlling weight over Parsons's case, and the ALJ could reject them if there is contradictory evidence in the record.

Dr. Wagner evaluated Parsons on May 6, 2016. Tr. 404. She opined that Parsons had the ability to understand and remember one-two step instructions, but that she was markedly impaired in her ability to sustain concentration and persist in work-related activities at a reasonable pace; maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public; and deal with normal pressures in a competitive work setting. Tr. 403. However, Dr. Wagner also noted that Parsons was fully oriented and could repeat six digits forwards and backwards, recall three words after a five-minute interval, and interpret proverbs. Tr. 402. Further, she noted that Parsons was also able to perform simple equations including addition, multiplication, and serial 3's. *Id.*

The ALJ assigned Dr. Wagner's opinion partial weight because, notwithstanding the indicated limitations, he found that there was no evidence that they rose to the level of severity that the opinion suggested. Tr. 17. The ALJ noted that Parsons had reported she could handle money, take care of pets, drive a motor vehicle, and perform simple chores. *Id.* He also found that there was no evidence in the record that suggested Parsons would have difficulties in interacting with others at the level suggested by Dr. Wagner. *Id.* Further, the ALJ noted that Parsons was not taking her psychiatric medications at the time of the examination. *Id.* Additionally, the ALJ pointed out that Parsons had reported she had been off her medications for a long time when she began treating with JPS Health Network in June 2016. *Id.*

The undersigned finds that the ALJ erred by picking and choosing the evidence that supports his conclusion and failing to consider or discuss contradictory evidence. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citations and internal quotation marks omitted) ("ALJ must consider all the record evidence and cannot pick and choose only the evidence that supports his position."). In assessing the weight he gave to Dr. Wagner's opinion, the ALJ did not mention Parsons's mental health progress notes which indicated that she was irritable and had screamed and yelled for attention without listening to others. Tr. 412, 418, 419. Nor did he mention that the reason that Parsons had not taken her medications for anxiety may have been because she could not afford medication or transportation to medical services. Tr. 400. Further, the ALJ did not refer to the fact that Parsons was repeatedly found to have dysphoric mood, labile affect, and poor coping skills. Tr. 414, 429, 436, 530, 534, 542, 557.

The ALJ also relied on Dr. Wagner's recitation of Parsons's activities of daily living. He reasoned that the marked impairments noted by Dr. Wagner do not rise to the

level of severity that her opinion suggested because Parsons can handle money, take care of pets, drive a motor vehicle, and perform simple chores. However, the Fifth Circuit has held that an ALJ is not permitted to "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003). Here, the ALJ did not base his reasoning on medical evidence that contradicts Dr. Wagner's opinion. Instead, he drew his own conclusions from some of the data, including opinion evidence from Dr. Wagner's report in which she reached the opposite conclusion. Therefore, the undersigned finds that the ALJ's determination to give Dr. Wagner's opinion partial weight is not supported by substantial evidence.

Had the ALJ properly accorded more weight to Dr. Wagner's opinion, the ALJ may have found Parsons to be disabled. Accordingly, the undersigned finds that Parsons was prejudiced by the ALJ's determination to give Dr. Wagner's opinion partial weight only.

**B.    Parsons's Appointments Clause Challenge Was Untimely.**

Relying on the Supreme Court's decision in *Lucia v. S.E.C.*, _ U.S. _, 138 S. Ct. 2044 (2018), Parsons argues that her case should be remanded for a new hearing with a different and constitutionally appointed ALJ because her case was adjudicated by an ALJ who was not properly appointed to that position in accordance with the Appointments Clause of the United States Constitution. ECF No. 19 at 14. Specifically, she maintains that the SSA "has acknowledged its ALJs as inferior officers that were not constitutionally appointed when, on July 16, 2018, Nancy Berryhill approved all appointments as her own." *Id.* at 18 (citing SSA Emergency Message EM-18003 REV 2, available at https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM). Further, she contends that because her request for review of the ALJ's decision was filed on February

13, 2018, approximately four months before the Supreme Court's decision in *Lucia*, and submitted her brief to the Appeals Council on April 5, 2018, still two months prior to the *Lucia* decision, this is the first opportunity she had to challenge the appointment of the ALJ. *Id.* at 20. Therefore, she argues her claim is timely. *Id.*

The Commissioner contends that Parsons forfeited her Appointments Clause challenge by failing to assert it before the agency during the administrative proceedings. ECF No. 20 at 13. The Commissioner highlighted that "in the wake of *Lucia*, 36 out of 38 district courts that have decided the issue—including three districts in this Circuit—have rejected attacks on the validity of an SSA ALJ's appointment where the claimant failed to make the constitutional challenge at the administrative level . . . ." *Id.* at 18.

The Commissioner is correct that most courts that have addressed the arguments advanced by Parsons have found that a failure to challenge the validity of an ALJ's appointment during the administrative process results in a forfeiture of that challenge. *See, e.g.*, *Perkins v. Berryhill*, No. 4:18-CV-664-A, 2019 WL 2997082, at *4 (N.D. Tex. June 21, 2019) (and the cases cited therein); *Velasquez on Behalf of Velasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *3 (E.D. La. Dec. 17, 2018), report and recommendation adopted, No. CV 17-17740, 2019 WL 77248 (E.D. La. Jan. 2, 2019) ("Accordingly, I find that plaintiff has waived the Appointments Clause issue by failing to assert it before the ALJ or the Appeals Council."). The undersigned agrees with the reasoning in those cases and finds that *Lucia* requires SSA claimants to raise an Appointments Clause challenge during the administrative process. After all, the Supreme Court noted in *Lucia* that relief was available only to a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case,"

and found that Lucia "made just such a timely challenge." *Lucia*, _ U.S. _, 138 S. Ct at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-183 (1995)).

Here, Parsons did not present any challenge to the validity of the ALJ's appointment prior to filing this appeal. Based on the Supreme Court's reasoning in *Lucia* and the majority of courts deciding the same issue, the undersigned concludes that Parsons's failure to raise her Appointments Clause challenge to the SSA at any point during the administrative proceedings amounted to a forfeiture of her claim. Regarding Parsons's claim that this was the first opportunity she had to challenge the appointment of the ALJ, the undersigned notes that the Supreme Court had held in *L.A. Tucker* that parties may not wait until they are in court to raise a statutory defect in the appointment of the official who issued the agency's initial decision. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). Accordingly, Parsons was on notice that she had to raise her Appointments Clause challenge during the administrative process.

Moreover, a circuit split on the question of whether ALJs are subject to the Appointments Clause existed well before the ALJ considered Parsons's application for benefits. *See Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 904–05 & n.4 (E.D. Mich. 2018) (noting that "[t]he split in authority regarding the appointment of ALJs was acknowledged on December 27, 2016 in *Bandimere v. Securities and Exchange Commission*, 844 F.3d 1168, 1188 (10th Cir. 2016)."); *Axley v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-1106-STA-CGC, 2019 WL 489998, at *2 (W.D. Tenn. Feb. 7, 2019) ("By the time Plaintiff received his final agency decision on March 24, 2017, there was already a split of authority on the issue of whether SEC ALJs were constitutionally appointed. *Compare Bandimere v. SEC*, 844 F.3d 1168 (10th Cir. 2016) (finding the appointments

unconstitutional), with *Lucia v. SEC*, 832 F.3d 277 (D.C. Circ. 2016) (rejecting the argument that appointments were unconstitutional)."). Therefore, Parsons could have raised her Appointments Clause challenge at the administrative level, and by failing to do so, she has forfeited her claim.

## V.   CONCLUSION

Although Parsons's Appointments Clause challenge was untimely, the ALJ improperly weighed the opinion evidence of Dr. Wagner in his RFC assessment. Accordingly, the undersigned **RECOMMENDS** that Judge Pittman **REVERSE** the Commissioner's decision to deny benefits and **REMAND** this case for further consideration in accordance with this recommendation.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on January 13, 2019.

                                           _____
                                           Hal R. Ray, Jr.
                                           UNITED STATES MAGISTRATE JUDGE

13